In the Matter of RALPH MARTINELLI, Petitioner, against LEWIS J. VALENTINE, as Police Commissioner of the City of New York, Respondent.

Supreme Court, Special Term, Bronx County, December 15, 1942.

*Osborne A. McKegney* for petitioner.

*William C. Chanler, Corporation Counsel* (*Charles C. Weinstein* and *Silas S. Lippman* of counsel), for respondent.

HAMMER, J. This application is for a peremptory order in the nature of mandamus to the Police Commissioner of New York

city, requiring the return to petitioner of six telephone instruments detached from their connections and removed by city policemen from petitioner's premises, and the cancellation of the police order given orally to the New York Telephone Company to discontinue telephone service to petitioner. Petitioner asserts the detachment and removal of the telephone equipment and the order to the Telephone Company were without legal or court warrant, or legal process, and constituted an illegal physical seizure of the equipment and unlawful interference with his right to telephone service. The facts of seizure and order are not disputed. The Commissioner denies the asserted illegality, alleging the premises and telephones were being used to distribute and transmit racing information in violation of the Penal Law. This he claims justified his acts. As a separate defense the Commissioner alleges the restoration of the telephones is not a duty required to be performed by him under the provisions of the New York City Charter. In other defenses he alleges petitioner has an adequate remedy at law by replevin and does not come into court with clean hands. The Commissioner, however, has not shown an existing indictment or information laid against petitioner charging him with the criminal acts upon which the Commissioner relies for justification. The allegation of connection of petitioner with the conduct of a branch office at the questioned Bronx premises of George Curtis Publishing Co., a Brooklyn establishment of asserted gambling fame, and of Thomas J. Ryan and Moses Annenberg, notorious Chicago gamblers said to be the main principals, seems to be immaterial as the more important negating allegation or admission is made that at the time of seizure and order the premises and telephones were not in use, as petitioner was then evading detection by the police of his gambling activities. The New York Constitution prohibits the tapping of telephone wires except by court order or warrant, obtainable only upon oath or affirmation showing reasonable ground to believe evidence of crime may thus be obtained. (N. Y. Const., art. 1, § 12.) The same section requires that the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. No matter how despicable a person or place might ultimately be shown, these salutary provisions of the Constitution enunciating the immunities of persons under the Bill of Rights from any possible tyranny of government furnishes protection which must be enforced in the courts.

In view of these fundamental prohibitions it is difficult to understand why the wires in question were not first tapped under due order; and sufficient proper evidence, if such existed, being thus obtained, orderly procedure under law followed. In the absence of proof of fact showing the actions taken were not prohibited, allegations of suspicion and innuendo are of little help. Nor does it seem just or equitable to say that a person entitled to the protection of his rights under law should be denied the quick relief of mandamus because of an alleged lack of cleanliness of his hands, or that relief might some day be had under the slower remedy of law of replevin. Justice delayed in many instances amounts to justice denied. Delay under some circumstances may render inadequate any relegation to an action at law. To the personality involved the eyes of justice are blinded. Under the heel of tyranny the most respected citizen could be crushed in violation of constitutional right. The court is concerned with the question solely of whether, under the facts, such violation has been shown. Violation being shown, it matters not whose rights they were, as the court then acts under the compelling majesty of law offended. The facts here show that the Commissioner, acting through his subordinate police officers, was not justified in his acts of seizure of equipment and order to the Telephone Company to discontinue telephone service. By the use of means readily available to the Police Commissioner and department, rights wrongfully invaded may be reinstated; restoration may be had of things improperly seized and service reestablished by mere notification to the Telephone Company of rescission of the prior order or direction improvidently issued.

The mandate of the court in a proceeding equitable in character, in the discretion of the court, may be granted to compel the performance of a legal duty or to prevent a failure in the performance thereof. In discretion it may be issued to remedy a wrong, which would be continued and condoned were it refused. It may compel the discharge of that which necessarily becomes a public duty by reason of an act done under purported authority of law, but which in fact has been shown to have been without such authority. The police order improvidently issued will continue to violate petitioner's constitutional rights unless and until it is nullified or withdrawn, and the latter act accordingly has become the public duty of the Commissioner. That being so, it follows that the Commissioner must also return the seized telephone equipment. Accordingly, petitioner's application is granted.

Settle order.